UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PATRICK FIELDS, on his own behalf and on behalf of those similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> EDWIN G. BUSS, in his official capacity as Commissioner of the Indiana Department of Correction, <br><br> Defendant. | Case No. 1:09-cv-00603-TWP-DML |

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This claim for declaratory relief is before the Court on the parties' cross motions for summary judgment. Plaintiff Patrick Fields, on behalf of himself and those similarly situated ("Fields"), alleges the Indiana Department of Correction's ("IDOC") Sex Offender Management and Monitoring Program ("SOMM program") requiring sex offenders to discuss their offense and sexual history, violates the plaintiff's Fifth Amendment guarantee against self-incrimination. [Dkt.53]. Defendant Edwin G. Buss ("Defendant") asserts that Fields' claims are not ripe, that participants in the SOMM program are not compelled to provide incriminating statements, and that statements made during treatment will not necessarily be used during criminal proceedings. For the reasons stated herein, the Court **DENIES** the Plaintiff's Motion for Summary Judgment [Dkt. 53] and **GRANTS** the Defendant's Motion for Summary Judgment [Dkt. 62].

### I. FACTUAL BACKGROUND

The parties have stipulated to certification of this cause as a class action. The class consists of: "all persons in Indiana on parole who are, or in the future will be, required as a condition of parole to participate in sex offender treatment that requires them to discuss their

1

sexual history and/or admit to the acts resulting in their conviction of any sex offense that is being, or will be, appealed and/or for which post conviction relief is being, or will be, sought at the time of sex offender treatment." Fields is a sex offender identified through statute as a target sex offender.[1] Fields was accused of a sex crime in 2004, to which he pled not guilty. Fields, however, was found guilty at trial and convicted on October 26, 2004. At the time this Motion was filed, Fields was in the process of filing a Petition for Post-Conviction Relief. Fields denies, and has always denied, that he committed the acts for which he was convicted.

**A.      Overview of SOMM Program**

During his incarceration, Fields was required to and did participate in the SOMM program. The SOMM program, a sex offender treatment program designed to treat incarcerated sex offenders and sex offenders on parole,[2] was established by the IDOC and approved by the Indiana Parole Board in 1999.

The SOMM program has three phases. The first two phases take place while the target offenders are incarcerated, and the third phase takes place in the community while offenders are

---

[1] "Target" sex offenders are those individuals convicted of any of the following:
- Ind. Code 35-41-2-4, Aiding, Inducing or Causing another person to commit an offense (with a secondary sex offense)
- Ind. Code 35-41-5-1, Attempting to Commit a crime (with a secondary sex offense)
- Ind. Code 35-41-5-2, Conspiracy to Commit a felony (with a secondary sex offense)
- Ind. Code 35-42-4-1, Rape
- Ind. Code 35-42-4-2, Criminal Deviate Conduct
- Ind. Code 35-42-4-3, Child Molestation
- Ind. Code 35-42-4-4(b), Child Exploitation
- Ind. Code 35-42-4-5, Vicarious Sexual Gratification
- Ind. Code 35-42-4-6, Child Solicitation
- Ind. Code 35-42-4-7, Child Seduction
- Ind. Code 35-42-4-8, Sexual Battery
- Ind. Code 35-42-4-9, Sexual Misconduct with a Minor
- Ind. Code 35-45-4-1, Public Indecency
- Ind. Code 35-45-4-4, Promoting Prostitution with a Minor
- Ind. Code 35-45-4-5, Voyeurism
- Ind. Code 35-46-1-3, Incest.

[2] As a condition of parole, the parole board *may* require a parolee who is a sex offender to participate in a treatment program for sex offenders approved by the parole board.

on parole. In Phase I of the SOMM program, target offenders receive a psychosexual needs assessment, including an assessment of their risk level, and a brief orientation about the SOMM program. Phase II provides "psychoeducation" to incarcerated target offenders and includes a risk-based treatment program under which offenders are required to participate in the program for a specific number of hours, based upon their risk level. Phase III of the SOMM program involves post-release supervision under which the offender is given "specialized, intensive community treatment and polygraphs utilizing the containment approach with specialized parole stipulations."

**B.      Fields' Participation in SOMM**

During Fields' participation in the SOMM program, he did not admit to guilt of the crime for which he was convicted nor did he discuss his sexual history. The SOMM program requires sex offender parolees to participate in Phase III of the SOMM program as a condition of their release to parole. At the time of his enrollment, Fields was informed that as a part of the SOMM program, he would be required to "assume full responsibility for [his] offenses and behavior."

On April 16, 2009, Fields was released from prison onto parole, which will continue until approximately April 18, 2011.[3] Fields is required to participate in and successfully complete Phase III of the SOMM program. Through Phase III of the SOMM program – as administered by the Indianapolis Counseling Center ("ICC") – Fields was required to sign a "Consent for Release of Information: Criminal Justice System Referral," authorizing ICC to communicate with the Marion County Parole District #3 about him. Further, Fields was required to take responsibility for his instant offense, the crimes for which he was convicted, and to discuss his sexual history in

---

[3] Indiana law requires that sex offenders must be placed on parole for not more than 10 years and that sexually violent predators who committed their crime after June 30, 2006 must be placed on parole for life.

detail. Phase III requires that the parolees discuss their entire sexual history in detail, including sex offenses for which they were never charged or for which charges were not pursued.

Specifically, in Phase III of the SOMM program, parolees are required to take responsibility for their crimes by admitting to guilt of the crime(s) of which they were convicted. Parolees must admit to committing their offense even if they intend to, and still have time to, appeal that conviction, or intend to seek post-conviction relief but have not yet done so. The parolees are not required to give the victims' last names, but are required to provide detailed information about each sex offense they have committed.

If a parolee refuses to admit to guilt of his offense, he is first placed into a "deniers' group" if his treatment facility has such a group. In the deniers' group he is given a period of approximately eight weeks to admit to guilt of his offense. If the parolee still refuses to admit to guilt of his instant offense at the end of the eight weeks of the deniers' group, or if there is no deniers' group available, he is required to take an instant offense polygraph examination at which point he is asked to admit to committing the crime of which he was convicted. If the parolee refuses to admit to guilt of his instant offense and the results of the instant offense polygraph examination show he was untruthful, the resulting consequence may be removal from the SOMM program or the parolee may be allowed to continue on parole. Removal from the SOMM program "will be considered a violation" of parole.

Fields is aware that failure to discuss past alleged crimes and his past sexual history may result in a violation of his parole. Fields has also been informed that, while on parole, he will be required to take polygraph tests regarding any sex crimes and/or sexual history as part of the SOMM program at least once every 6 months, and if he does not pass a sexual history polygraph

examination, that may result in removal from the SOMM program. Fields was labeled by ICC as uncooperative, poorly motivated for treatment, and not amenable to treatment.

Non-compliance with the SOMM program is considered a violation of the parole release agreement. Upon a showing of probable cause that a parolee violated a condition of parole, the parole board may order a revocation hearing, and may order the parolee confined pending a preliminary hearing and/or a revocation hearing. If it is determined at a parole revocation hearing that a parolee violated a condition of parole, the parole board may: a) continue parole, with or without modifications, or b) revoke parole and order the parolee imprisoned. There is however, no automatic revocation, no automatic ejection from sex offender treatment and no automatic filing of a parole violation. It is within the discretion of the provider whether to allow offenders who deny guilt to continue in the program.

If parole is revoked, the sex offender parolee shall be imprisoned for the remainder of the fixed term. However, the person shall again be released on parole when the person completes that remainder, less the credit time the person has earned since the revocation. The parole board may also reinstate the person on parole at any time after the revocation.

**C.     Information Collected Through SOMM**

Target offenders are typically required to sign the SOMM program's "Informed Consent to Participate in Sex Offender Treatment," form which applies to all three phases of the program. The informed consent form requires that the offender acknowledge that they will be required to discuss and take responsibility for past acts of sexual violence and abuse they have committed and requires that offenders acknowledge that, in Phase III, they will be required to attend and participate in sex offender treatment in the community, and take a polygraph exam at least every

six (6) months. Participants in the SOMM program are not offered immunity from future prosecution based on any admissions or statements made in the program.

Each sex offender's parole stipulation requires the parolee to sign a waiver of confidentiality that will allow treatment providers to share and discuss behavioral management conditions and *modus operandi* behaviors with law enforcement. The informed consent form requires that the offender:

(1) acknowledge that he/she understands that SOMM treatment providers are required by law to report the names of any identifiable child or disabled adult victims that [he/she] may disclose during the course of [his/her] treatment,
(2) acknowledge the "Limits of Confidentiality," such as the fact that, "when necessary, SOMM Program treatment providers and staff may share information with each other," and with other specified entities, including the Indiana Department of Correction, verbally and in writing, about the offender's "treatment and supervision needs"; and
(3) acknowledge "that the Department of Correction and the INSOMM Program may provide information about [the offender] without [his/her] permission to the Indiana Parole Board and appropriate Probation Department for supervision purposes."

The Informed Consent form states that completion of the form is "voluntary," but notes the offender will not be permitted to participate in the SOMM program unless the form is completed.

**D.     Disclosure of Information Collected Through SOMM**

Through its SOMM program, the IDOC has provided information about SOMM parolees to the state police and federal government through the Violent Criminal Apprehension Program ("ViCAP"). The ViCAP program is run by the federal government and collects information on known perpetrators in order to compare that information to unsolved crimes and thereby generate leads or suspects for such crimes. ViCAP reports that were provided to law enforcement were drawn from information that had gone through a court and were available in the public realm. ViCAP reporting ended in September 2007. There is no evidence of an offender in the class

whose (1) parole was revoked or who was returned to prison because of refusal to admit to the facts of the crime for which the offender was on parole, or (2) admission made during SOMM treatment was handed over to law enforcement.

## II. LEGAL STANDARDS

### A. Cross Motions

It is not uncommon for a court to be confronted with cross-motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief. "In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard." *Kohl v. Ass'n. of Trial Lawyers of America*, 183 F.R.D. 475, 478 (D. Md. 1998).

### B. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment. Under Rule 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). As articulated by the Supreme Court, "summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole." *Id*. at 327. In ruling on a motion for summary judgment, the *admissible* evidence presented by non-movant must be believed and all reasonable inferences must be drawn in her favor. *Zerante v. DeLuca*, 555 F. 3d 582, 584 (7th Cir. 2009) (emphasis added).

The party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion. *Celotex*, 477 U.S. at 323. When the moving party produces proper support of its motion, the burden then shifts to the non-movant. It is not enough for the

non-movant merely to raise factual arguments that cast "some metaphysical doubt as to the material facts." *Baker v. Elmood*, 940 F. 2d 1013 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). A party who bears the burden of proof on a particular issue…must *affirmatively demonstrate*, through specific factual allegations, that there is a genuine issue of material fact that requires trial. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (citation omitted) (emphasis added).

### III.  DISCUSSION

**A.  Triggering Event**

Plaintiffs' assert that the SOMM program requirement that sex offenders must disclose information regarding their underlying criminal conviction and sexual history violates their Fifth Amendment privilege against self-incrimination. The Fifth Amendment dictates that "[n]o person…shall be compelled in any criminal case to be a witness against himself." U.S. Const., Amdt. 5. The text of the Fifth Amendment, however, does not prohibit *all* penalties levied in response to a person's refusal to incriminate their self; it prohibits only the compulsion of such testimony. *See McKune v. Lile,* 536 U.S. 24, 49 (2002) (O'Connor, J., concurring). In 1977, the Supreme Court addressed Fifth Amendment rights and found that the "[G]overnment cannot penalize assertion of the constitutional privilege against compelled self-incrimination by imposing sanctions to compel testimony which has not been immunized." *Riggins v. Walter*, 279 F.3d 422, 430 (7th Cir. 1995) (quoting *Lefkowitz v. Cunningham,* 431 U.S. 801, 806, (1977)). However, "whatever other infirmities punishing a general refusal to appear and testify may or may not have, punishment alone does not necessarily violate the Fifth Amendment." *Riggins*, 279 F.3d at 430.

"In each of the so-called 'penalty' cases, the State *not only compelled an individual to*

*appear and testify*, but also sought to induce him to forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.'" *Id*. (emphasis added) (quoting *Minnesota v. Murphy*, 465 U.S. 420, 434 (1984) (citations omitted)).

In 2002, the Supreme Court again addressed Fifth Amendment rights, and expressed that the Fifth Amendment "not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *McKune,* 536 U.S. at 55 (quoting *Minnesota v. Murphy,* 465 U.S. 420, 426 (1984) (internal citations omitted)).

However, in 2003, in *Chavez v. Martinez*, the Supreme Court found that "statements compelled by police interrogations of course may not be used against a defendant at trial, *but it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs*." *Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (internal citations omitted and emphasis added); *see United States v. Verdugo-Urquidez,* 494 U.S. 259, 264 (1990) ("The privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental *trial right* of criminal defendants. Although conduct by law enforcement officials prior to trial may ultimately impair that right, *a constitutional violation occurs only at trial*") (emphases altered and citations omitted)); *Withrow v. Williams,* 507 U.S. 680, 692 (1993) (describing the Fifth Amendment as a "'trial right'"); *Chavez,* 538 U.S. at 705 (O'Connor, J., concurring in part and dissenting in part) (describing "true Fifth Amendment claims" as "the extraction *and use* of compelled testimony" (emphasis altered)).

Ultimately, the Supreme Court found that mere coercion does not violate the text of the

Self-Incrimination Clause absent *use* of the compelled statements in a criminal case against the witness. *Chavez*, 538 U.S. at 769. The Seventh Circuit addressed this issue in *Best v. City of Portland*. There, the plaintiff argued that his Fifth Amendment rights were violated because statements improperly elicited were used against him at the suppression hearing, which led to his continued confinement awaiting trial. The Seventh Circuit stated the following about its view of *Chavez*:

> As the district court understood things, any statements Best made to police were never used against him in a "criminal case," meaning a trial, because the prosecutor dismissed the charges before trial. But we have not adopted the narrow view that *use in a "criminal case"* means "at trial"; even use of a suspect's unwarned statements at an arraignment, probable cause hearing, and bail hearing <u>*constituted use of the statements in a "criminal case" in a manner sufficient to implicate the self-incrimination clause of the Fifth Amendment*</u>.

*Best v. City of Portland*, 554 F.3d 698, 702 (7th Cir. 2009) (citations omitted and emphasis added); *see also Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1026 (7th Cir. 2006) (where plaintiff's Fifth Amendment rights were found to be triggered when confession was *offered* by the prosecution at the preliminary hearing to support a determination of probable cause, then *used* to set the amount of bail, then at a subsequent arraignment on charges Plaintiff's confession was once again admitted before she was called upon to plead guilty or not guilty). In *Sornberger*, the Seventh Circuit found that under *Chavez,* a criminal prosecution *must at least be initiated* to implicate the right against self-incrimination. *Sornberger*, 434 F.3d at 1026 (plaintiff - who was not under arrest - was transported to Galesburg Public Safety Building where an interview was conducted which resulted in a verbal and eventually a written confession). Therefore, after *Chavez*, *Sornberger,* and *Best,* the question facing the Court in connection with Fields' Fifth Amendment claim is whether by virtue of the SOMM program requirement of disclosure of the parolee's sexual history, Fields has been compelled by the

10

government to give incriminating information that is being used against him in a criminal case, including a parole violation hearing.

**B.      Ripeness**

The Court will first turn to the government's argument that Fields' Fifth Amendment claim is not yet ripe for review. The constitutional component of ripeness is a jurisdictional prerequisite. *Smith v. Wisconsin Dep't of Agric., Trade & Consumer Prot*., 23 F.3d 1134, 1142 (7th Cir. 1994) (standing and ripeness are jurisdictional prerequisites). One who invokes the jurisdiction of a federal court must establish, before all else, that he has suffered a concrete and particularized injury; a conjectural one will not do. *U.S. v. Schoenborn*, 4 F.3d 1424, 1434 (7th Cir. 1993); *Banks v. Secretary of the Indiana Family and Social Services Administration,* 997 F.2d 231, 238 (7th Cir. 1993).

A challenge to a *condition* of supervised release is neither premature nor speculative because the defendant will be subject to the challenged condition upon his release from prison. *U.S. v. Boone*, 215 Fed. Appx. 818, 821 (11th Cir. 2007). Although the supervised release condition itself is immediately appealable, specific challenges to the *implementation* of parole condition may not necessarily be ripe. *Id*. In *U.S. v. Davis, the court was faced with a* defendant, who would soon be subject to a special condition of supervised release requiring him to cooperate with probation officers in investigations and interviews during release. *U.S. v. Davis*, 242 F. 3d 49, 51 (1st Cir. 2001). The *Davis* Court declared that Davis faced a sufficiently direct and immediate dilemma, as he reasonably sought to determine whether exercising his Fifth Amendment privilege in response to questions by his probation officer would result in revocation of his supervised release.

However, the *Davis* case dealt with the determination of ripeness regarding a condition of

release. Fields does not challenge the condition, but rather asserts that the implementation of the condition violates his Fifth Amendment rights. The *Davis* Court addressed the issue of ripeness regarding implementation by stating the following: "Should the court revoke Davis's supervised release as a penalty for his legitimate exercise of his Fifth Amendment privilege, he remains free to challenge that action at the time it occurs….But that eventuality, however, has not yet occurred (and may never occur)." *Id*. The *Davis* Court instead focused only on the condition of requiring him to cooperate with probation officers itself because it was ripe for consideration.

Here, as of the time the cross motions for summary judgment were filed and briefed, Fields (1) had not at any point disclosed his sexual history through the SOMM program, (2) had not produced sufficient evidence to establish a causal link of his refusal to participate in Phase III of SOMM, to his negative labeling, and (3) had not had his parole denied or revoked despite his lack of participation. Finally, no statements provided by Fields through the SOMM program had been presented against him in any court or at a parole violation hearing. *Mayle v. Felix*, 545 U.S. 644, 661 (2005) ("We do not here question his assertion that his Fifth Amendment right *did not ripen until his statements were admitted against him at trial*, the essential predicate for his Fifth Amendment claim was an extrajudicial event, i.e., an out-of-court police interrogation.") (emphasis added); *see generally Chavez,* 538 U.S., at 766-767. Not only has Fields not produced any incriminating statements that are being used against him in trial, but the action upon which Fields' claim depends - revocation of his supervised release - has yet to occur (and may never occur). The Court, therefore, finds Fields' claims to be unripe.

Even if the issues were ripe, the law and facts would render denial of Fields' Motion for Summary judgment on the merits. Although the Court believes Fields' claim to be unripe, the Court will briefly address each element of the Fifth Amendment analysis in turn and proceed

with an analysis on the merits.

**C.     Compulsion**

The question in determining whether a program violates the Fifth Amendment is whether the consequences for non-participation in it create a compulsion that encumbers the constitutional right to be free from self-incrimination. *McKune*, 536 U.S. at 35. It is the plaintiff's burden to prove compulsion. *Id.* at 28. Outside of the prison context, the Supreme Court has described compulsion in relatively broad terms, describing compulsion as anything that makes the exercise of a right costly. *Pentlarge v. Murphy*, 541 F. Supp. 2d 42, 426 (D. Mass. 2008).

This Court must consider the constitutional rights of *parolees*. The Supreme Court has noted that parolees, or conditional releases, are not entitled to the absolute liberty afforded to ordinary citizens, but they do maintain some limited constitutional rights. *Griffin v. Wisconsin*, 438 U.S. 868, 874 (1987). The Supreme Court has found that while there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence, in *Greenholtz* they pointedly distinguished parole revocation and probation revocation cases, noting that there is a 'critical' difference between denial of a prisoner's request for initial release on parole and revocation of a parolee's conditional liberty. *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 292, FN2 (1998) (emphasis and citations omitted) (quoting *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 9 (1979)).

In considering whether the Defendant's actions relating to Fields' parole requirements amount to compulsion, it is proper for the Court to consider the *nexus* between remaining silent and the consequences that follow. *See McKune*, 536 U.S. 24, 44 (emphasis added). Answers are "compelled" only if "the witness is *required* to answer over his valid claim of the privilege." *See*

*Minnesota v. Murphy,* 465 U.S. 420, 426 (1984) (emphasis added). Here, the questioning has happened. Compulsion therefore turns on what the government has done in such a case. *Nat'l Fed'n of Fed. Employees v. Greenberg,* 983 F.2d 286, 292 (D.C.Cir.1993).

The Court must apply the facts presently before it. Here, the paroled offenders are not automatically enrolled in the SOMM program. The parolees' testimony is not automatically used in connection to charges brought. The evidence in front of the Court demonstrates that Fields did not volunteer any information to the SOMM program during his time in prison, yet he was still paroled with good time credit. As a parolee, Fields has not volunteered any information to the SOMM program, he was removed from the SOMM program and yet again, his parole was not revoked. Ultimately, the parties have not pointed the Court to any direct, explicit evidence that not participating or limiting participation in the SOMM program has resulted in any loss of rights or that it has proven costly to Fields or any other member of his class. Taken together, the Court finds insignificant evidence to determine that the potential revocation of parole for noncompliance with the SOMM program rises to the level of compulsion as a matter of law. Further, there is not sufficient evidence to give rise to the existence of a genuine issue of material fact regarding compulsion.

### IV. THREAT OF INCRIMINATION

The Fifth Amendment privilege is only properly invoked in the case of a real and appreciable danger of self-incrimination. *U.S. v. Madrzyk*, 990 F. Supp. 1004, 1007 (N.D.Ill. 1998); *Marchetti v. United States,* 390 U.S. 39, 48 (1968) (citations omitted). If the threat is remote, unlikely, or speculative, the privilege does not apply. *Id*.

This applicability of Fifth Amendment self-incrimination protections was addressed by the Seventh Circuit in *Allison v. Snyder*. The Seventh Circuit stated the following:

> A majority of the Justices concluded in *Chavez v. Martinez,* 538 U.S. 760 (2003), that courts may not award damages against investigators who wrongfully induce suspects to supply incriminating information that is never used in a criminal prosecution. Four Justices (Thomas, J., joined by Rehnquist, C.J., and O'Connor & Scalia, JJ.) held this because *the self-incrimination clause applies only to evidence used in a criminal case*; two Justices (Souter, J., joined by Breyer, J.) held this because any judicially crafted expansion of the clause should be implemented by remedies other than money damages….[N]o matter what one makes of the risk that someday Illinois will use against a detainee evidence gathered in its treatment program…Plaintiffs would be free to ask the court to suppress evidence offered against them; they are entitled to no more than that option.

*Allison v. Snyder*, 332 F.3d 1076, 1080 (7th Cir. 2003) (emphasis added).

Further in *U.S. v. Swanson*, 2011 WL 1045843 (7th Cir. March 24, 2011), the Seventh Circuit established that the Fifth Amendment's self-incrimination right is in essence a right relating to prosecution. The Seventh Circuit stated the following relating to the practical effect of the Fifth Amendment:

> If a person wants to exercise [his Fifth Amendment] right, he must assert it; however failure to assert is excused when a person would have been punished if he exercised his rights; when this occurs, the defendant's failure to assert the privilege is excused, *his answers are deemed compelled*, and they are inadmissible *in a criminal prosecution*.

*Id*. at *8.

Based upon the Seventh Circuit's analysis in S*ynder* and *Swanson*, sufficient evidence has not been supplied to establish that the facts presented in this case give rise to a real and appreciable threat of incrimination. Summary judgment for Fields on this issue is precluded and summary judgment is granted in favor of the Defendant.

## V. CONCLUSION

For the aforementioned reasons, Defendant's Motion for Summary Judgment is **GRANTED** [Dkt. 62], and Plaintiff's Motion for Summary Judgment [Dkt. 53] is **DENIED**.

SO ORDERED.

Date: 03/31/2011

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jacquelyn Bowie Suess
jsuess1417@gmail.com

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

David A. Arthur
INDIANA OFFICE OF THE ATTORNEY GENERAL
david.arthur@atg.in.gov